**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

DIGIPROTECT USA CORP.,

       *Plaintiff*,

v.

DOES 1 – 240,

       *Defendants.*

No. 10-cv-008760-PAC-HP

**MEMORANDUM OF LAW IN SUPPORT**
**OF THIRD-PARTY COMCAST CABLE**
**COMMUNICATIONS MANAGEMENT,**
**LLC'S MOTION TO MODIFY THE**
**NOVEMBER 29, 2010 ORDER**
**TO SHOW CAUSE PERMITTING**
**EXPEDITED DISCOVERY,**
**AND FOR A PROTECTIVE ORDER**

Lacy H. Koonce, III

**DAVIS WRIGHT TREMAINE LLP**
1633 Broadway
New York, New York 10019
(212) 489-8230

*Attorney for Third-Party Comcast Cable*
*Communications Management, LLC*

Of Counsel:

John D. Seiver
Leslie G. Moylan
**DAVIS WRIGHT TREMAINE LLP**
1919 Pennsylvania Ave., N.W., Suite 200
Washington, DC 2000
(202) 973-4200

*Counsel for Third-Party Comcast Cable*
*Communications Management, LLC*

December 27, 2010

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ............................................................................................ii

**INTRODUCTION AND FACTUAL BACKGROUND**……………………………………….2

     **A.**     **The Look-Up Process Is Time Consuming And Expensive**………………...3

     **B.**     **The Look-Up Process Will Disrupt Comcast's Regular Business Operations.**5

     **C.**     **Plaintiff Refused Comcast's Reasonable Offer For Compliance With The Subpoena**…………………………………………………………………….6

**ARGUMENT**…………………………………………………………………………………..7

**I.**     **This Court Should Enter Provide For Reimbursement Of Costs And Limit The Scope Of And Extend The Time To Comply With Any Subpoena Served On Comcast In This Action**………………………………………………………….8

     **A.**     **The Court Should Modify The Timing Provisions Of The November 29 Order And Enter A Protective Order Limiting The Scope Of And Providing For A Reasonable Amount Of Time To Respond To Any Subpoena In This Action**……………………………………………………………………..9

     **B.**     **The Court Should Enter A Protective Order Requiring Plaintiff To Pay The Costs To Comply With Any Subpoena Served On Comcast In This Action**..10

**CONCLUSION**………………………………………………………………………12

i

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Celanese Corp. v. E.I. du Pont de Nemours & Co.*,
   58 F.R.D. 606 (D. Del. 1973) ................................................................. 10

*In re Exxon Valdez*,
   142 F.R.D. 380 (D.D.C. 1992) ............................................................... 10

*In re Rezulin Products Liability Litigation*,
   No. CIV.00 CIV.2843 LAK, 2002 WL 24475 (S.D.N.Y. Jan. 10, 2002) ............................. 10

*Linder v. Calero-Portocarrero*,
   180 F.R.D. 168 (D.D.C. 1998) ............................................................ 8, 9

*Spears v. City of Indianapolis*,
   74 F.3d 153 (7th Cir. 1996) ................................................................. 10

## STATUTES

17 U.S.C. § 512(a) .......................................................................... 4

18 U.S.C. § 2703(d) ....................................................................... 14

47 U.S.C. § 551(a)(2)(B) ................................................................. 14

47 U.S.C. § 551(c) ........................................................................ 13

47 U.S.C. § 551(c)(2)(B) ................................................................. 13

47 U.S.C. § 631(c) ........................................................................ 13

Third-Party Comcast Cable Communications Management, LLC ("Comcast") submits this memorandum in support of its Motion to Modify the November 29, 2010 Order to Show Cause Permitting Expedited Discovery, and for a Protective Order.

On or about November 30, 2010, Plaintiff DigiProtect USA Corp. ("Plaintiff" or "DigiProtect") served a subpoena duces tecum (the "Subpoena") on Comcast seeking the identity of 96 Comcast Internet service subscribers who are a subset of the 240 Doe Defendants in this action and who allegedly infringed Plaintiff's copyright by downloading a certain audiovisual work. The Subpoena was issued pursuant to this Court's November 29, 2010 Order to Show Cause Permitting Expedited Discovery ("November 29 Order") that granted Plaintiff's motion to conduct expedited discovery. The return date on the Subpoena is December 28, 2010.

Comcast respects copyrights and recognizes the need for copyright owners to take legitimate steps to protect their rights. Nevertheless, in this particular instance, complying with the Subpoena will be oppressive, unduly burdensome, and will disrupt Comcast's regular business operations. Compliance with the Subpoena will overwhelm Comcast's resources at the expense of other vital work including, but not limited to, responding to valid law enforcement legal requests (which includes matters of national security and child exploitation).

Further, Comcast did not have an opportunity to appear before the November 29 Order was issued and therefore neither Comcast nor any other ISP who would be tasked with conducting IP address lookups could provide any input as to how the IP address system works and is administered. Importantly, the November 29 Order does not allow for the reimbursement of a substantial amount of the costs Comcast will incur in responding to this or any future subpoena in this action. For these reasons, the Court should modify the November 29 Order. Additionally, the Court should enter a protective order applicable to any future subpoena served

1

on Comcast in this action, limiting the scope of information sought, allowing for a reasonable

time for Comcast to comply, and setting the amounts to be reimbursed by Plaintiff to Comcast.

## INTRODUCTION AND FACTUAL BACKGROUND

This is a copyright infringement case in which Plaintiff alleges that each of the 266

anonymous defendants has infringed Plaintiff's copyright in a certain audiovisual work by

distributing and downloading unauthorized copies of the work over the Internet.  *DigiProtect*

*USA Corp. v. John/Jane Does 1-266*, No. 1:10-cv-08759-TPG (S.D.N.Y.), Compl. ¶¶ 1, 9.

Comcast is not a defendant in this case, nor has Plaintiff alleged that Comcast has any liability

for the alleged infringement of plaintiff's copyrights.  Comcast is a third party that is, among

other things, an Internet service provider ("ISP"), and is not liable for subscribers' "Peer to Peer"

("P2P") downloads that may infringe any copyright.  17 U.S.C. § 512(a).  Comcast is subject to

Plaintiff's discovery requests because Plaintiff does not know the identity of the Doe defendants

whom it sued anonymously.  *Id.* ¶ 3.  Plaintiff claims to have identified certain IP addresses

corresponding to various ISPs, including Comcast.  *Id.*  This Court granted permission for

Plaintiff to pursue limited discovery of the ISPs to attempt to identify the subscribers associated

with those specific IP addresses who will then be defendants.  Declaration of Monica Mosley

dated December 20, 2010 ("Mosley Decl."), Exh. A (November 29 Order at 1).

The November 29 Order further provides that "subject to the right of each ISP to

challenge this Order upon notice to Plaintiff's counsel prior to the return date of the subpoena,

each ISP served hereunder shall within ten (10) calendar days of such service of this Order notify

each of the subscribers whose identities are sought herein; and each such subscriber shall have

28 days from the date thereof to submit any opposition to the subpoena(s)."  *Id.*  Pursuant to the

November 29 Order, Plaintiff served the Subpoena on Comcast on November 29, 2010, seeking

2

the identities of 96 individuals who, Plaintiff alleges, are Comcast subscribers.  Mosley Decl.,

Exh. A.  The return date was set by Plaintiffs as December 28, 2010.  Comcast did not have the

opportunity to participate in this Court's consideration and ultimate grant of Plaintiff's Motion in

the November 29 Order but has engaged in discussions with Plaintiff's counsel to reach an

accommodation on timing and reimbursement but was unable to get a reasonable response from

Plaintiff before the return date, thus necessitating this motion.  Comcast did file timely objections

to the Subpoena by letter dated December 13, 2010 that bore a New Jersey District Court

Caption, but seeks modify the November 29 Order and enter a protective order with respect to all

subpoenas served on Comcast in this action to allow for timely processing of requests for IP

address resolutions and reasonable cost reimbursement.  Mosley Decl., Exh. B.

      A.      **The Look-Up Process Is Time Consuming And Expensive**

The process for linking IP addresses to subscriber account details such as name and

address – or performing a "look-up" as it is known – is time consuming and requires careful,

systematic processes to ensure the integrity and accuracy of the results.  Mosley Decl. ¶ 6.  As an

initial matter, Comcast has no way of confirming or denying that any of the alleged downloads at

issue here (infringing or otherwise) occurred, as such alleged downloads use P2P or similar

services or applications, and the files are not stored on any of Comcast's servers.  *Id.* ¶ 5.

Therefore, Comcast's role in this case is to look up, research, identify and confirm which of its

customer accounts were assigned specific IP addresses on specified dates and times.

In most instances, where a request seeks information concerning an IP address controlled

by Comcast, Comcast is able to identify which subscriber account was assigned a particular IP

address on a specific date at a specific time.  *Id.* ¶ 6.  However, because residential IP addresses

are dynamically (constantly rotating among users) assigned and users can change day-to-day (or

within a day), Comcast has to consult its logs for each date and time associated with each IP

3

address to determine the identity of the subscriber account assigned to that IP address at any given moment. *Id*. The logs identify a specific electronic address for a cable modem and then Comcast consults its subscriber database(s) to see which subscriber has that modem registered to his or her account. *Id*. Whether an IP address links to a subscriber account already identified in connection with another look-up, or does not link to any subscriber at all, the look-up process for that IP address is the same as with the look-up of an IP address that does produce unique identifying information. *Id*. This means that each time Comcast looks up an IP address to see if it has been assigned to a customer account, it must follow the same steps it always follows even if that customer account has already been identified in a prior lookup because there is no linking information between IP addresses which are randomly assigned and a customer may have more than one IP address but Comcast has no way to associate them. Each lookup stands on its own.

Additionally, in the civil context, because Comcast is a cable operator, it is required under federal law to give notice to any subscriber whose identity is sought *before* any disclosure is made, which allows that subscriber to take measures to prevent the disclosure of his or her identity. *Id*. ¶ 7. In order to expedite the notification process to comply with such requests and to have confirmation of delivery of the notice, Comcast makes the required notifications by overnight delivery service. *Id*. This process allows the subscriber to determine if a substantive objection or motion to quash to prevent disclosure of his or her identity is needed to be filed because Comcast reproduces and includes a copy of the Order and subpoena with each notification to the subscriber. Comcast, as the ISP, is not equipped to make those determinations and would be overwhelmed to an even greater degree if it had to make substantive motions with respect to each IP address listed.

4

The pure cost to Comcast associated with each IP address look-up is approximately $120 per IP address. *Id.* ¶ 8. This includes the look-ups through two systems, Comcast's labor to confirm authenticity and accuracy, notification by overnight mail, reproduction copies of the Order and subpoena, and interaction with responding subscribers or their attorneys. *Id.* The approximate cost breakdown is as follows:

> $95.00 - Administrative Processing (Ticket creation, IP resolution to modem and subscriber, quality control, outgoing notification to subscriber, interaction with subscriber, formal response, ticket closure)

> $25.00 - Overnight mail notification (based on the average of mailing to different zones throughout the country from New Jersey. The actual costs are frequently much higher)

*Id.* Because look-ups of IP addresses that do not link at all to one of our subscribers do not require notification to or interaction with any subscriber, the cost associated with such IP addresses is approximately half – or $60 per look-up. *Id.*

**B.     The Look-Up Process Will Disrupt Comcast's Regular Business Operations**

In the normal course of its business, Comcast processes approximately 200 court orders, subpoenas and/or warrants requesting subscriber identification information per business day. *Id.* ¶ 3. Based on the number of analysts employed by Comcast who process such requests, each analyst processes approximately 22 requests per day. *Id.* Additionally, as part of Comcast's quality control measures, each analyst reviews the work of another analyst each day. *Id.*

Given their time-sensitive nature, emergency and law enforcement requests are given priority and dealt with expeditiously. *Id.* ¶ 4. For example, such requests often involve an imminent threat of death or injury or the imminent flight of a suspect, and often require compliance within less than an hour after receiving the request. *Id.* As such, Comcast does not and cannot devote 100% of its time each day to civil requests. *Id.*

5

**C.      Plaintiff Refused Comcast's Reasonable Offer For Compliance With The Subpoena**

After Comcast was served with the Subpoena, Comcast and Plaintiff attempted to reach an agreement as to the timing and scope of Comcast's response. *Id*. ¶10.  Comcast represented that it would commit to perform, on a rolling basis, 25 IP address look-ups per month, and to provide a response in connection with each set of 25 IP addresses within 30 days of the date of the look-up performed for those specific addresses. *Id.* ¶ 11.  Comcast also informed plaintiff that measures were being taken to increase production and that by the end of the first quarter of 2011 Comcast hoped to be able to double that number per 30-day production. *Id*.  Comcast also advised Plaintiff that Comcast would preserve its records for the IP addresses listed in the Subpoena so that the rolling responses would not cause information related to IP addresses that go beyond Comcast's 180 day residential IP address retention policy and be deleted. *Id.* ¶ 12.

Additionally, given the significant expenditure of time and resources Comcast will incur in connection with responding to the Subpoena, Comcast requested that Plaintiff reimburse the associated costs within a short period after providing each response. *Id.* ¶ 13.  Comcast also extended the courtesy of offering to reduce the costs to plaintiff in return for the accommodation of extended time to produce, thus alleviating some of the significant over time cost burden. The cost would be $95 for each total response and $35 for each non-identified response. *Id*.

Comcast explained to Plaintiff that the 25 look-ups per month would, of course, be in addition to the various other requests for information Comcast processes on a daily basis. *Id.* ¶ 14.  In response to the recent onslaught of this and similar copyright infringement subpoenas[1],

---

[1] This case is one of two nearly identical copyright litigations that Plaintiff's counsel, Foley & Lardner LLP, has recently filed in this judicial district.  The cases each are against unnamed defendants, and each alleges virtually identical facts.  *See DigiProtect USA Corp. v. John/Jane Does 1-266*, No. 1:10-cv-08759 (S.D.N.Y.).  Plaintiff's counsel has sought and obtained orders permitting the issuance of third-party subpoenas to obtain identifying information for the

Comcast has already had to hire personnel not forecasted when it budgeted for 2010, and has incurred significant expense paying for overtime work.  Comcast explained that this increase in volume is the maximum amount that Comcast's analysts can reasonably perform, even with the increased personnel and overtime hours.  *Id.*

As of the time of filing this motion, no specific agreement has been reached as to reimbursement of Comcast's costs or a limit on the number of look-ups per month.  *Id.* ¶ 15.

Plaintiff's effort will impose massive costs and burdens on Comcast, which is not a party to either of the underlying cases.  In light of the significant burden on Comcast in complying with the Subpoena, the Court should modify the November 29 Order, which provides for an unreasonable time within which to comply with the Subpoenas.  Additionally, the Court should enter a protective order applicable to any subpoena served on Comcast in this action, limiting the scope of information sought, allowing for a reasonable time for Comcast to comply, allowing all subpoenas served under this Order to be responded to consecutively, not concurrently, and setting the amounts to be reimbursed by Plaintiff to Comcast.  Finally, because Plaintiff has unreasonably refused to enter into a reasonable accommodation as proposed, thus forcing Comcast to file this motion, the Court should award Comcast its costs and attorneys fees.

## ARGUMENT

Federal Rule of Civil Procedure 26 requires a court to enter a protective order limiting discovery where "the discovery sought is unreasonably cumulative or duplicative" or where "the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(2)(C).  Courts must be particularly sensitive to the burdens placed on non-parties,

---

unknown defendants, including from Comcast, which will impose massive costs and burdens on Comcast, which is not a party to either of the underlying cases.  Comcast has objected by letter to both Subpoenas, which bear a New Jersey district court caption.

and "concern for the unwanted burden thrust upon non-parties is a factor entitled to special

weight in evaluating the balance of competing needs" with respect to non-party discovery.

*Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998).  Courts have found that a third-

party subpoena can be overbroad based on the "time and expense required" to respond, including

"the volume of material requested, the ease of searching for the requested documents in the form

presented, and whether compliance threatens the normal operations of the responding [party]."

*Linder v. Calero-Portocarrero*, 180 F.R.D. 168, 175 (D.D.C. 1998).  If responding would require

"an inordinate amount of time and resources," this Court may quash the subpoena or limit it.  *Id.*

        As set forth in detail herein, Comcast's compliance with the Subpoena will be extremely

time-consuming and expensive, and will cause a significant disruption to Comcast's ordinary

business operations.  Moreover, this Subpoena is one of two served on Comcast by Plaintiff's

counsel, Foley & Lardner, without regard to the undue burden and expense such subpoenas place

on Comcast.  Compliance with any one of the subpoenas is highly burdensome to Comcast.

These subpoenas improperly attempt to pass the costs of litigation onto non-parties such as

Comcast.  Of course, Comcast realizes no profit in complying with the subpoenas, even when

reimbursed for the costs associated with the look-ups.  As such, the Court should modify the cost

provisions of the November 29 Order and enter a protective order setting the reimbursement

amounts to be paid Comcast and limiting the timing and scope of any subpoena served on

Comcast in this action.

**I.      This Court Should Enter Provide For Reimbursement Of Costs And Limit The
         Scope Of And Extend The Time To Comply With Any Subpoena Served On
         Comcast In This Action**

        In light of the significant burden on Comcast in complying with the subpoena, the Court

should modify the cost provisions of the November 29 Order and grant a protective order

limiting the scope of and extending the time to comply with the subpoena.

8

**A.    The Court Should Modify The Timing Provisions Of The November 29 Order And Enter A Protective Order Limiting The Scope Of And Providing For A Reasonable Amount Of Time To Respond To Any Subpoena In This Action**

The November 29 Order – which Plaintiff's counsel drafted unilaterally and this Court entered before any third-party subpoenas were served – contains timing provisions that are unduly burdensome.  Plaintiff's counsel inserted a provision stating that Comcast has only ten days within which to notify each of the subscribers whose identities are sought in the Subpoena. November 29 Order at 1.  This provision necessarily requires Comcast to first perform its IP address lookup process in order to identify each of those subscribers within that ten day time frame.  This Court should modify this provision.

Plaintiffs' first Subpoena seeks the identities of 96 Comcast subscribers (not including the additional 97 identities sought in the nearly identical subpoena served by Plaintiff's counsel as previously discussed).  A protective order should be entered providing Comcast with a reasonable amount of time that would permit Comcast to respond to the subpoena on a timeframe that does not excessively tax its resources and inhibit it from engaging in other business.  With its current resources, Comcast could reasonably respond to no more than 25 IP address lookup requests per month.  Mosley Decl. ¶ 11.  Any additional burden on Comcast would require an "inordinate amount of time and resources" and would impose burdens far out of proportion to any benefit.  *Linder*, 180 F.R.D. at 175.  As such, the Court should modify the November 29 Order and enter a protective order limiting Comcast's compliance with the subpoena to providing information with respect to no more than 25 IP addresses per month.  The protective order should provide Comcast with 30 days to provide a response from the date of notice to it's subscriber for  each set of 25 IP addresses.  The look-up and response process would thus occur on a rolling basis.  As such, Comcast would preserve its records for the IP

9

addresses listed in the subpoena so that the rolling responses would not cause information related to IP addresses to go beyond Comcast's 180 day residential IP retention policy.

### C.  The Court Should Enter A Protective Order Requiring Plaintiff To Pay The Costs To Comply With Any Subpoena Served On Comcast In This Action

The Court should enter a protective order applicable to any subpoena served on Comcast in this action setting the rates to be reimbursed by Plaintiff to Comcast.  Rule 45 protects non-parties from significant expense, and courts have repeatedly ordered parties to pay costs to non-parties in advance.  This Court has discretion to order Plaintiff to bear the expense of seeking third party discovery based on the burdens created and the equities of the particular case.  *In re Rezulin Products Liability Litigation*, 2002 WL 24475 at *1; *In re Exxon Valdez*, 142 F.R.D. 380, 383 (D.D.C. 1992).  When a third-party subpoena is overly broad, and when compliance would cause an undue burden, a district court does not abuse its discretion by ordering the subpoenaing party to bear all costs.  *Spears v. City of Indianapolis*, 74 F.3d 153, 158 (7th Cir. 1996) (affirming district court's decision to order subpoenaing party to pay all costs); *accord Celanese Corp. v. E.I. du Pont de Nemours & Co.*, 58 F.R.D. 606, 610, 612 (D. Del. 1973) (requiring subpoenaing party to bear all reasonable expenses for responding to "very broad" subpoena).

In this instance, requiring Plaintiff to pay all of Comcast's costs is reasonably related to the actual cost of compliance with the Subpoena a reasonable preventive measure to curb abusive discovery tactics.  Indeed, the costs of complying with the two subpoenas recently issued by Plaintiff's counsel alone could cost Comcast more than $23,000.

Because Comcast incurs costs for each IP address that it looks up; those costs do not diminish if two IP addresses happen to relate to the same subscriber account or if no conclusive

identifying information is found.  Mosley Decl. ¶ 6.  The protective order should thus provide

that look-up costs are to be calculated on a per-IP-address basis, rather than per subscriber.

In addition, the protective order should require Plaintiff to pay the costs of notifying each

subscriber.  Section 631(c) of the Federal Communications Act prohibits Comcast from

providing any of the subpoenaed information without prior notice to the affected subscriber.  47

U.S.C. § 551(c) (permitting disclosure "pursuant to a court order authorizing such disclosure,"

47 U.S.C. § 551(c)(2)(B), only if "the subscriber is notified of such order by the person to whom

the order is directed").[2]  Thus, in order to comply with the Subpoena, Comcast would be charged

with making up to 96 notifications – one for each IP address resolved to a subscriber as

contained in the Subpoena.  Moreover, these notices must precede any disclosure of the

subscribers' identities or the notice provision becomes a nullity.[3]

The cost of making such notifications is not insignificant, Mosley Decl. ¶ 8, and Comcast

should not have to bear these costs of providing information to Plaintiff as a disinterested third

party to this action.  Accordingly, in order to protect Comcast from incurring unreasonable and

significant expense, the Court should enter a protective order to require Plaintiff to reimburse

---

[2]  The reference in Section 631 to "cable service or other service" includes Internet service because "other service" is defined to include "any wire or radio communications service provided using any of the facilities of a cable operator that are used in the provision of cable service."  47 U.S.C. § 551(a)(2)(B).  "This specific definition of 'other service' plainly includes internet service transmitted via a cable system."  *In re Application of United States for an Order Pursuant to 18 U.S.C. § 2703(d)*, 157 F. Supp. 2d 286, 291 (S.D.N.Y. 2001).  "The term 'personally identifiable information' in [Section 631] thus relates to information regarding subscribers to 'cable service or other service.'"  *Id.*

[3] Such notice must afford the subscriber enough time to challenge anonymously any disclosure before it is made.  A decision otherwise would render the notice provision a nullity.  *See* Lyrissa Barnett Lidsky & Thomas F. Cotter, *Authorship, Audiences, and Anonymous Speech,* 82 Notre Dame L. Rev. 1537, 1598 (April 2007) (advocating extending the protections of Section 631 in other contexts to "guarantee the defendant has a chance to defend his right to speak anonymously *before it is too late*") (emphasis added).

Comcast for the costs incurred for each IP address look-up and for notifying the relevant subscribers.

## CONCLUSION

For the foregoing reasons, Comcast respectfully requests that the Court modify the November 29 Order, which contains unreasonable timing provisions.  Additionally, the Court should enter a protective order applicable to any subpoena served on Comcast in this action, limiting the scope of information sought, allowing for a reasonable time for Comcast to comply, and setting the amounts to be reimbursed by Plaintiff to Comcast.  Finally, the Court should award Comcast costs and attorneys fees associated with its motion.

Dated:  December 27, 2010                          Respectfully submitted,


                                                   __s/ Lacy H. Koonce, III_____
                                                        Lacy H. Koonce, III

                                                   **DAVIS WRIGHT TREMAINE LLP**
                                                   1633 Broadway
                                                   New York, New York 10019
                                                   (212) 489-8230

                                                   *Attorney for Third-Party Comcast Cable
                                                   Communications Management, LLC*


                                                   *Of Counsel:*
                                                   John D. Seiver
                                                   Leslie G. Moylan
                                                   **DAVIS WRIGHT TREMAINE LLP**
                                                   1919 Pennsylvania Ave., N.W., Suite 200
                                                   Washington, DC 2000
                                                   (202) 973-4200

                                                   *Counsel for Third-Party Comcast Cable
                                                   Communications Management, LLC*

12

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 27th day of December, 2010, true and correct copies of the foregoing Memorandum of Points and Authorities in Support of Third-Party Comcast Cable Communications Management, LLC's Motion to Modify the November 29, 2010 Order to Show Cause Permitting Expedited Discovery, and for a Protective Order were served via ECF upon all counsel of record.

                                         <u>  s/ Lacy H. Koonce, III           </u>