**Davis Wright Tremaine LLP**

Suite 200
1919 Pennsylvania Avenue, NW
Washington, DC  20006-3401

John D. Seiver
202.973.4212 Direct Telephone)
202.973.4412 Direct Fax
202-973.4200 Main Telephone
202.973.4499 Main Fax
johnseiver@dwt.com

December 13, 2010

VIA E-MAIL AND U.S. MAIL

Britton Payne, Esq.
Foley & Lardner LLP
90 Park Avenue
New York, NY   10016-1314

      Re:    *DigiProtect USA Corp. v. Does 1-266*
               Case No. 10 Civ. 8759 (TPG) (MHD); and
               *DigiProtect USA Corp. v. Does 1-240*
               Case No. 10 Civ. 8760 (PAC) (HP) –
               Subpoenas to Comcast

Dear Mr. Payne:

      I am counsel to Comcast Cable Communications LLC ("Comcast").  This letter is in response to the subpoenas duces tecum served on Comcast on November 29 and 30, 2010 in the above-referenced actions.  Your subpoenas request that by December 20 and 28, 2010, Comcast produce and permit inspection and copying of documents identifying end user subscribers and/or intermediaries using Comcast-registered IP addresses listed on Schedules A to the subpoenas that were sent to subscribers and also attached to your two letters.

      First, I understand you have spoken to and emailed Comcast, specifically Mr. Colin Padgett or Ms. Monica Mosley, on December 3, 9 and 10, 2010, with respect to compliance with the two subpoenas.  Although you were offered reasonable terms under which Comcast could promptly and without undue burden respond to your subpoenas, you have apparently refused agreement.  Indeed, you mistakenly think that Comcast has unlimited resources to devote to responding to your subpoenas and that the expenses for which Comcast is entitled to reimbursement are limited to photocopies. However, Rule 45 provides that "an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded."  Indeed, "nonparty witnesses are powerless to control the scope of litigation and discovery, and should not be forced to subsidize an unreasonable share of costs of a litigation to which they are not a party."[1]  In this regard, courts have consistently held that nonparties should be compensated for their time and

---

[1] *United States v. Columbia Broadcasting Sys. Inc.*, 666 F.2d 364, 371-72 (9th Cir. 1981) *cert denied*, 457 U.S. 1118 (1982).

Anchorage | New York | Seattle
Bellevue | Portland | Shanghai
Los Angeles | San Francisco | Washington, D.C.

www.dwt.com

Britton Payne, Esq.
December 13, 2010
Page 2

labor in producing requested documents.[2]  Mr. Padgett and Ms. Mosley explained the costs attendant upon complying with and responding to your subpoenas and offered to ameliorate those costs commensurate with production levels.  Resolving each IP address is time consuming, initially and for quality control, notice and response.

Because your refusal to agree to the terms for timing of responses and reimbursing Comcast's costs is therefore unreasonable under Fed. R. Civ. P. 45(c)(2), this letter is a formal objection on the grounds of undue burden, expense, and oppression.  Moreover, as I will explain below, the Federal Communications Act prohibits Comcast from providing any of the subpoenaed information to you without prior notice to the affected subscriber(s) and a court order, not just a subpoena, with reasonable time allotted for the subscribers to interpose objections.  Accordingly, Comcast objects to your subpoenas pursuant to Fed. R. Civ. P. 45(c)(2)(B) and no documents will be made available on the date specified unless and until further directed in a specific court order and with reasonable reimbursement.

In that regard I note the underlying matters are pending in the Southern District of New York and Judge Griesa issued an order allowing any ISP to challenge the order before the subpoena compliance dates.  If you will not agree to the terms offered for complying with and responding to the subpoenas, we will be forced to file a motion to modify the order to specifically allow the terms and conditions we proposed, and we will also seek costs and attorneys' fees.  Finally, should you also move to compel in the New Jersey court, we will oppose that motion on these same grounds and also seek relief in the form of costs and fees, in addition to the imposition of the terms we proposed.

So there will be no mistake about it, processing subpoenas and responding in the way we proposed, while expensive and time-consuming in your mind, is required by law.  As a cable operator, Comcast must protect its cable, telephone, and Internet subscribers' privacy in compliance with federal law.  Comcast may not provide any subscriber's personally identifiable information to a third party without first ensuring compliance with the requirements of Section 631(c) of the Communications Act, 47 U.S.C. § 551(c).  That Section generally prohibits cable operators from disclosing such information without the subscriber's express written consent and also imposes an affirmative obligation on a cable operator to "take such actions as are necessary to prevent unauthorized access to such information by a person other than the subscriber or cable operator."  47 U.S.C. § 551(c)(1).  Personally identifiable information, or "PII," would include information that specifically identifies the subscriber, including such information as name, address and phone number.  "It would be hard to conceive of information which more personally

---

[2] *See Linder v. Adolfo Calero-Portocarrero*, 251 F.3d. 178, 182 (D.C. Cir. 2001) (finding that nonparty should be compensated for half the reasonable copying and labor costs); *In re Midlantic Corp. Shareholder Litigation*, 1994 WL 750664 at *6 (stating that nonparty must be compensated for reasonable copying and labor costs); *Exxon Valdez*, 142 F.R.D. at 384 (requiring requesting party to pay a portion of discovery costs); *Mycogen Plant Science, Inc. v. Monsanto Co.*, 1996 U.S. Dist. LEXIS 2264, * 16 (E.D. Pa. 1996) (finding that a nonparty should be compensated for its time and labor in producing documents); *Compaq Computer Corp., v. Packard Bell Electronics, Inc.*, 1995 U.S. Dist. LEXIS 20549, *24-25 (N.D. Cal. 1995) (holding that nonparty witness is entitled to be compensated at a reasonable hourly rate for producing documents); *In re Letters Rogatory*, 144 F.R.D. 272, 278-79 (E.D. Pa. 1992) (reimbursement for production costs).

Britton Payne, Esq.
December 13, 2010
Page 3

identifies an individual than his name address, and telephone number." *Warner v. American Cablevision of Kansas City*, 699 F.Supp. 851, 855 (D. Kan. 1988).[3]

The PII that cable operators must protect from unconsented disclosures pertains to video, telephone, and Internet subscribers. The reference in Section 631 to "cable or other service" includes Internet and telephone service because "other service" is defined to include "any wire or radio communications service provided using any of the facilities of a cable operator that are used in the provision of cable service." 47 U.S.C. § 551(a)(2)(B). "This specific definition of 'other service' plainly includes internet service transmitted via a cable system." *In Re Application of the United States of America for an Order Pursuant to 18 U.S.C. § 2703(d)*, 157 F. Supp. 2d 286, 291 (S.D.N.Y. 2001). "The term 'personally identifiable information' in [Section 631] thus relates to information regarding subscribers to 'cable service or other service.'"[4] *Id.*

Even though the Electronic Communications Privacy Act, 18 U.S.C. §§ 2701, *et seq.* ("ECPA"), generally governs access to records held by providers of electronic communications services, including Internet and telephone services, the Communications Act would still prevent the disclosure. "When a cable company provides Internet services to its customers . . . it may appear to be subject to both [ECPA and the Communications Act]. And where those Acts conflict, the company may find itself stuck between the proverbial rock and a hard place." *In Re Application of the United States of America for an Order Pursuant to 18 U.S.C. § 2703(d)*, 36 F.Supp. 2d 430, 432 (D. Mass. 1999). Cable operators are therefore prohibited from disclosing information concerning their Internet and telephone service subscribers, regardless of any provision under ECPA that may permit limited disclosures.[5] Accordingly, we look at only those exceptions to the prohibitions on disclosure that are contained in Section 631.

---

[3] Section 631(a)(2)(A) defines "Personally identifiable information" to exclude "any record of *aggregate* data which does not identify particular persons." 47 U.S.C. § 551(a)(2)(A)(emphasis added). *See also* H.R. Rep. No. 98-934 at 79 (1984) ("Personally identifiable information would include *specific* information about the subscriber...")(emphasis added).

[4] For purposes of **governmental** inquires seeking a subscriber's PII, information pertaining to a subscriber receiving Internet service was held by one court to be covered exclusively under the Electronic Communications Privacy Act, *In Re Application of the United States of America*, 157 F.Supp. 2d at 291-92. In the Patriot Act, Congress amended the Cable Act to expressly provide that ECPA controls when disclosure of Internet records are sought by a **governmental entity**, except that under no circumstances could such Internet records include those that reveal the subscriber's selection of video programming. 47 U.S.C. § 551(c)(2)(D). Because your client is not a governmental entity, it would not come within the statutory amendment's reference to ECPA.

[5] If only ECPA applied, it is possible that voluntary disclosure could be made. 18 U.S.C. § 2702(c)(5) does allow a provider to disclose "a record or other information" on an Internet or telephone subscriber to "any person other than a governmental entity." To the extent this would allow a cable operator to disclose PII of an Internet or telephone subscriber to a private, non-governmental person such as your client, such disclosure would still subject the operator to claims under the privacy provisions in the Communications Act. ECPA does have a general immunization of conduct for disclosures ordered or permitted under ECPA, but such immunization pertains to claims under ECPA itself, not the Communications Act. 18 U.S.C. § 2703(e). In addition, to the extent the federal law governing telephone company records (CPNI) might apply, disclosure would be prohibited as well. 47 U.S.C. § 222.

Britton Payne, Esq.
December 13, 2010
Page 4

Section 631(c)(2) provides three exceptions to the general ban on disclosing personally identifiable information without the subscribers' express consent. Disclosure is permitted: (1) "when necessary to render, or conduct a legitimate business activity related to, a cable service or other service provided by the cable operator to the subscriber," 47 U.S.C. § 551(c)(2)(A); (2) "pursuant to a court order authorizing such disclosure, if the subscriber is notified of such order by the person to whom the order is directed," 47 U.S.C. § 551 (c)(2)(B); and (3) in the form of aggregate customer name and address lists, as long as the cable operator has provided the subscriber the opportunity to prohibit or limit such disclosure and the lists contain no information regarding customers' viewing activities or other transactions. 47 U.S.C. § 551(c)(2)(C).

Under the "necessary to render" exception, the essential issues are whether the disclosure of name, address and phone number is *necessary* to provide either: (a) cable service or other service, or (b) a legitimate business activity related to the cable or other service. Examination of Section 631(c)(2)(A)'s use of the term "necessary" is informative. The Act does not define the term "necessary." Compliance with your subpoenas has no relation, necessary or otherwise, with the service we render subscribers. Accordingly, disclosure would not be allowed as one "necessary" to the provision of our services under the Communications Act. Indeed, we have no information on the underlying litigation, your client's defenses or the relevance, if any, of the requested PII.

Therefore, the only exception applicable to your subpoenas is contained in Section 631(c)(2)(B), which requires a court order and notice to the subscriber before disclosure of any PII may be made.[6] Because the protection of our subscribers and determining and resolving the IP addresses you submitted will take considerable time and effort, unless and until you agree to reasonable reimbursement and a reasonable extension of time to fulfill the large order, as we have proposed, we will *not* notify our subscribers or produce documents or any other information identifying subscribers associated with IP addresses.[7]

If you have any questions, or would like to discuss reasonable terms of compliance and avoid motion practice please contact me promptly.

Very truly yours,

John D. Server

cc: Monica Mosley
    Colin Padgett

---

[6] Such notice must afford the subscriber enough time to challenge anonymously any disclosure before it is made. A decision otherwise would render the notice provision a nullity. *See* Lyrissa Barnett Lidsky & Thomas F. Cotter, *Authorship, Audiences, and Anonymous Speech,* 82 Notre Dame L. Rev. 1537, 1598 (April 2007) (advocating extending the protections of Section 631 in other contexts to "guarantee the defendant has a chance to defend his right to speak anonymously *before it is too late*") (emphasis added).

[7] We will, however, preserve all data relevant to the IP addresses in question for 90 days.