UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DIGIPROTECT USA CORPORATION

                        Plaintiff,

          v.

JOHN/JANE DOES 1–240

                        Defendants.

Case No.: No. 10 cv 8760 (PAC) (HP)

**PLAINTIFF'S SUPPLEMENTAL MEMORANDUM OF LAW
IN FURTHER SUPPORT OF EX PARTE MOTION FOR LEAVE TO TAKE
<u>DISCOVERY PRIOR TO RULE 26(f) CONFERENCE</u>**

        Jonathan Moskin (JM-9814)
        Britton Payne (BP-5858)
FOLEY & LARDNER LLP

90 Park Avenue
New York, New York 10016
Tel: (212) 338-3572
Fax: (212) 687-2329

*Attorneys for Plaintiff
DigiProtect USA Corporation*

NYC_1078640.1

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

I.  PRELIMINARY STATEMENT ................................................................................ 1

II. ARGUMENT ............................................................................................................... 4

    A.  There Is No Present Basis On Which To Challenge Personal Jurisdiction ............ 4

    B.  There is No Basis on Which to Question Joinder ...................................................... 8

    C.  Comcast Should Be Required to Identify Its Subscribers ....................................... 9

III. CONCLUSION ............................................................................................................ 12

## TABLE OF AUTHORITIES

**FEDERAL CASES**

*Alcesia SRL v. ITC.*,
 No 2010-1156 (Fed. Cir. Jan 24, 2011) ................................................................................2

*Bleistein v. Donaldson Lithographing Company*,
 188 U.S. 239 (1903)..............................................................................................................1

*Campbell v. Acuff-Rose Music, Inc.*,
 510 U.S. 569 (1994)..............................................................................................................1

*Caroline Records, Inc. v. Does 1–175*,
 Case No. 04 2028 (D.D.C.)..................................................................................................3

*Cello Holdings, L.L.C. v. Lawrence-Dahl Cos.*,
 89 F. Supp. 2d 464 (S.D.N.Y. 2000)....................................................................................5

*Columbia Pictures Indus., Inc. v. Does 1–10*,
 Case No. 1:05CV515-BBM (N.D. Ga.)...............................................................................3

*Columbia Pictures Indus., Inc. v. John Doe*,
 Case no. C 04 5243 (N.D. Cal.)...........................................................................................3

*Columbia Pictures Indus., Inc. v. John Doe*,
 Case No. CV05-0134Z (W.D.Wash.)..................................................................................3

*Dean v. Barber*,
 951 F.2d 1210 (11th Cir. 1992) ...........................................................................................2

*Design Tex Group, Inc. v. U.S. Vinyl Mfg. Corp.*,
 No. 04 Civ 5002, 2005 WL 357125, 2005 U.S. Dist. LEXIS 2143 (S.D.N.Y. Feb. 14,
 2005) ....................................................................................................................................5

*Disney Enters., Inc. v. Does 1–18*,
 Case No. 05-RB-339(CBS) (D. Colo.) ................................................................................3

*DiStefano v. Carozzi N. Am., Inc.*,
 286 F.3d 81 (2d Cir. 2001)...................................................................................................5

*Ellison v. Robertson*,
 357 F.3d 1072 (9th Cir. 2004) ...........................................................................................10

*Equidyne Corp. v. Does 1–21*,
 279 F. Supp. 2d 481 (D. Del. 2003).....................................................................................2

*Gillespie v. Civiletti*,
    629 F.2d 637 (9th Cir. 1980) ...................................................................................................2

*Hustler Magazine, Inc. v. Moral Majority, Inc.*,
    796 F. 2d 1148 (9th Cir. 1986) .................................................................................................1

*Lions Gate Films, Inc. v. Does 1–23*,
    Case No. 04 C 7398 (N.D. Ill.) ................................................................................................3

*Lions Gate Films, Inc. v. Does 1–5*,
    Case No. 05-386 (EGS) (D.D.C.) ............................................................................................3

*Maclin v. Paulson*,
    627 F.2d 83 (7th Cir. 1980) .....................................................................................................2

*Mario Valente Collezioni, Ltd. v. Confezioni Semeraro Paolo, S.R.L.*,
    115 F. Supp. 2d 367 (S.D.N.Y. 2000) .....................................................................................5

*McGraw-Hill Cos., Inc. v. Ingenium Techs. Corp.*,
    375 F. Supp. 2d 252 (S.D.N.Y. 2005) .....................................................................................5

*Metro-Goldwyn-Mayer Pictures Inc. v. Does 1–10*,
    Case No. 04-2005 (JR) (D.D.C.) .............................................................................................3

*Metro-Goldwyn-Mayer Pictures Inc. v. Does 1–2*,
    Case No. 05CV0761-B (POR) (S.D. Cal.) ..............................................................................3

*Mfg. Tech. Inc. v. Kroger Co.*,
    No. 06 Civ. 3010, 2006 WL 3714445 (S.D.N.Y. Dec. 13, 2006) ............................................5

*Motown Record Co., L.P. v. Does 1–16*,
    Case No. 04 C 3019 (N.D. Ill.) ................................................................................................3

*Paramount Pictures Corp. v. Does 1–11*,
    Case No. 4 05CV00335CAS (E.D. Mo.) .................................................................................3

*Paramount Pictures Corporation v. Does 1–8*,
    Case No. 05-535 (D.N.J.) .........................................................................................................3

*Penguin Group (USA), Inc. v. American Buddha*,
    609 F.3d. 30 (2d Cir. 2010) .................................................................................................. 6-8

*Perfect 10, Inc. v. Amazon.com*,
    487 F.3d 701 (9th Cir. 2007) ...................................................................................................1

*Perfect 10, Inc. v. CCBill LLC*,
    488 F. 3d 1102 (9th Cir. 2007) ....................................................................................... 2, 10-11

*Perfect 10 Inc. v. Visa Int'l Svc. Ass'n*,
  494 F.3d 788 (9th Cir. 2007) ...................................................................................................1

*Playboy Enters., Inc. v. Chuckleberry Publ'g, Inc.*,
  687 F.2d 563 (2d Cir. 1982) ....................................................................................................1

*Playboy Enters., Inc. v. Dumas*,
  53 F.3rd 549 (2d. Cir. 1995) ....................................................................................................2

*Playboy Enters., Inc. v. Frena*,
  839 F. Supp. 1552 (M.D. Fla. 1993) .......................................................................................2

*Savage Universal Corp. v. Grazier Constr.*,
  No. 04 Civ. 1089, 2004 WL 1824102 (S.D.N.Y. Aug. 13, 2004) ..........................................5

*Screen Gems, Inc. v. Does 1–34*,
  Case No. SA04CA1038OG (W.D. Tex.) .................................................................................3

*Sony Music Entm't, Inc. v. Does 1–40*,
  326 F. Supp. 2d 556 (S.D.N.Y. 2004) .....................................................................................2

*Twentieth Century Fox Film Corp. v. Does 1-9*,
  Case No. 04-2006 (EGS) (D.D.C.) .........................................................................................3

*UMG Recordings, Inc. v. Doe*,
  2008 WL 4104214 (N.D. Cal. 2008) ......................................................................................2

*UMG Recordings v. Does 1–199*,
  Case No. 04-093 (CKK) (D.D.C.) ..........................................................................................3

*Valentin v. Dinkins*,
  121 F.3d 72 (2d Cir. 1997) ......................................................................................................2

*Voltage Pictures, LLC v. Does*,
  Case No. 1:10-cv-00873-RMU (D.D.C.) (RMU) ...................................................................3

*Warner Bros. Entm't Inc. v. Does 1–7*,
  Case No. 05 CV 0883 (S.D.N.Y.) ...........................................................................................3

*Warner Bros. Records, Inc. v. Does 1–6*,
  527 F. Supp. 2d 1 (D.D.C. 2007) ............................................................................................2

**STATE CASES**

*Sybron Corp. v. Wetzel*,
  46 N.Y.2d 197 (1978) ......................................................................................................... 5-6

**FEDERAL: STATUTES, RULES, REGULATIONS, CONSTITUTIONAL PROVISIONS**

17 U.S.C. § 512(i)(1)(A) ................................................................................................... 10

17 U.S.C. § 512 et seq. ..................................................................................................... 11

47 U.S.C. §551 ................................................................................................................. 11

Digital Millennium Copyright Act § 512 ........................................................................ 10

Digital Millennium Copyright Act § 512(i) .................................................................... 10

Digital Millennium Copyright Act §§ 512(a)–(d) ........................................................... 10

Fed. R. Civ. P. Rule 20 ...................................................................................................... 9

Fed. R. Civ. P. Rule 20(A) ................................................................................................ 9

Fed. R. Civ. P. Rule 20(B) ................................................................................................ 9

Fed. R. Civ. P. Rule 21 ...................................................................................................... 8

Fed. R. Civ. P. Rule 45 ...................................................................................................... 2

**STATE: STATUTES, RULES, REGULATIONS, CONSTITUTIONAL PROVISIONS**

CPLR §§ 301 and 302 ....................................................................................................... 4

Plaintiff, DigiProtect USA Corporation ("DigiProtect"), submits this memorandum in response to the Court's request that it address the issues of personal jurisdiction and joinder raised *sua sponte* by the Court in response to the motion of Comcast to modify the subpoena served pursuant to the Court's November 29, 2010 Order.

## I. PRELIMINARY STATEMENT

DigiProtect must note at the outset that Congress has not created a two-tier system of intellectual property protection, with some lesser form of protection for individual works disfavored by individual courts. Indeed, the Supreme Court made clear more than a century ago that the rights of copyright owners are not subject to such disparate treatment. Bleistein v. Donaldson Lithographing Company, 188 U.S. 239 (1903). Although DigiProtect's parent company began its existence as a record company and is owned by a German music star seeking to protect his own rights and the rights of other musicians against digital piracy, the copyrighted film here at issue is no less entitled to copyright protection than any of DigiProtect's musical or indeed any other copyrighted work. Numerous copyright cases – including certain leading precedents establishing guiding principles – have been charted by creators of what some might view as unsavory or salacious content. See, e.g., Campbell v. Acuff-Rose Music, Inc., 510 U.S. 569, 579 (1994) ("degrading" and "bawdy" parody); Perfect 10 Inc. v. Visa Int'l Svc. Ass'n, 494 F.3d 788 (9th Cir. 2007) (standard for contributory liability based on copying images of nude models); Hustler Magazine, Inc. v. Moral Majority, Inc., 796 F. 2d 1148 (9th Cir. 1986) (Hustler's copyrighted pornographic parody infringed, but subject to defendants' fair use defense); Playboy Enters., Inc. v. Chuckleberry Publ'g, Inc., 687 F.2d 563 (2d Cir. 1982) (trademark rights in "Playboy" name).[1] Likewise, as shown only yesterday, tobacco companies

---

[1] See also Perfect 10, Inc. v. Amazon.com, 487 F.3d 701 (9th Cir. 2007) (Google's framing and hyperlinking as part of an image search engine constitute fair use of Perfect 10's copyrighted

are permitted to stop piracy of their trademarks notwithstanding that their products are more directly deleterious to the well-being of users than any motion picture could be. Alcesia SRL v. ITC., No 2010-1156 (Fed. Cir. Jan 24, 2011) (affirming exclusion order of infringing Philip Morris cigarettes sold online). Any number of similar examples could be cited, and it would be a travesty for all copyright owners (and unprecedented in the field of intellectual property law) were this Court to establish a precedent denying such owners the ability to enforce their rights because of some personal distaste for a specific film at issue.

Moreover, DigiProtect emphasizes that, as shown in the Memorandum of Law that accompanied its ex parte motion for pre-suit discovery, in recent years, federal courts throughout the United States, including this Court, have granted expedited discovery in numerous Doe Defendant lawsuits that are indistinguishable from this action[2], allowing copyright owners to

---

pornographic images); Perfect 10, Inc. v. CCBill LLC, 488 F.3d 1102 (9th Cir. 2007) (analyzing DMCA safe harbors for infringement of Perfect 10's copyrighted pornographic images); Playboy Enters., Inc. v. Dumas, 53 F.3d 549 (2d. Cir. 1995) (pornographic illustrations were works made for hire under copyright law); Playboy Enters., Inc. v. Frena, 839 F. Supp. 1552 (M.D. Fla. 1993) (defendants' unauthorized online distribution infringed plaintiff's pornographic copyrighted images).

[2] Sony Music Entm't, Inc. v. Does 1–40, 326 F. Supp. 2d 556, 564–65 (S.D.N.Y. 2004) (rejecting challenge on First Amendment grounds to remain anonymous in favor of "plaintiffs' right to use the judicial process to pursue what appear to be meritorious copyright infringement claims"). See also Valentin v. Dinkins, 121 F.3d 72, 75–76 (2d Cir. 1997) (plaintiff should have been permitted to conduct discovery to reveal identity of defendant); Dean v. Barber, 951 F.2d 1210, 1215 (11th Cir. 1992) (error to deny plaintiff's motion to join John Doe defendant where identity of John Doe could have been determined through discovery; Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980) ("where the identity of alleged defendants [are not] known prior to the filing of a complaint . . . the plaintiff should be given an opportunity through discovery to identify the unknown defendants."); Maclin v. Paulson, 627 F.2d 83, 87 (7th Cir. 1980) (where "party is ignorant of defendants' true identity . . . plaintiff should have been permitted to obtain their identity through limited discovery."); Equidyne Corp. v. Does 1–21, 279 F. Supp. 2d 481, 483 (D. Del. 2003) (allowing early discovery from ISPs to obtain identities of users anonymously posting messages on message boards); Warner Bros. Records, Inc. v. Does 1–6, 527 F. Supp. 2d 1, 2 (D.D.C. 2007) (allowing plaintiffs to serve a Rule 45 subpoena upon Georgetown University to obtain the true identity of each Doe defendant, including each defendant's true name, current and permanent addresses and telephone numbers, email address); UMG Recordings, Inc. v. Doe, 2008 WL 4104214 (N.D. Cal. 2008) (allowing expedited

obtain the identities of P2P network users from ISPs through expedited discovery. All that is at issue at this juncture is discovery. As shown below, it is simply premature for the Court to address defenses of the individual defendants who have not yet even been identified. It would also create an administrative morass to divide a case into 240 separate suits at this early juncture, needlessly requiring duplicative efforts by numerous judges of this Court to oversee a very simple initial process and needlessly risking inconsistent outcomes. Moreover, the results from those ISPs that have already cooperated in responding to the subpoenas served in this matter reveal that some infringing IP addresses are simply <u>multiple</u> instances of infringement by the <u>same</u> subscriber. DigiProtect cannot know with requisite certainty whether other such repeat infringements are at issue among Comcast's or other ISPs' subscribers until it has received the IP lookup results from the ISPs. Even if severance might at some point be appropriate, it is certainly not appropriate at this preliminary stage of the litigation.

---

discovery in Internet infringement cases where a plaintiff makes a prima facie showing of infringement, there is no other way to identify the Doe defendant, and there is a risk an ISP will destroy its logs prior to the conference). See also <u>Warner Bros. Entm't Inc.</u> v. <u>Does 1–7</u>, Case No. 05 CV 0883 (S.D.N.Y.); <u>Motown Record Co., L.P.</u> v. <u>Does 1–16</u>, Case No. 04 C 3019 (N.D. Ill.); <u>Lions Gate Films, Inc.</u> v. <u>Does 1–23</u>, Case No. 04 C 7398 (N.D. Ill.); <u>Voltage Pictures, LLC</u> v. <u>Does</u>, Case No. 1:10-cv-00873-RMU (D.D.C.); <u>Metro-Goldwyn-Mayer Pictures Inc.</u> v. <u>Does 1–10</u>, Case No. 04-2005 (JR) (D.D.C.); <u>Twentieth Century Fox Film Corp.</u> v. <u>Does 1-9</u>, Case No. 04-2006 (EGS) (D.D.C.); <u>Lions Gate Films, Inc.</u> v. <u>Does 1–5</u>, Case No. 05-386 (EGS) (D.D.C.); <u>UMG Recordings</u> v. <u>Does 1–199</u>, Case No. 04-093 (CKK) (D.D.C.); <u>Caroline Records, Inc.</u> v. <u>Does 1–175</u>, Case No. 04 2028 (D.D.C.); <u>Paramount Pictures Corporation</u> v. <u>Does 1–8</u>, Case No. 05-535 (D.N.J.); <u>Columbia Pictures Indus., Inc.</u> v. <u>John Doe</u>, Case No. CV05-0134Z (W.D.Wash.); <u>Screen Gems, Inc.</u> v. <u>Does 1–34</u>, Case No. SA04CA1038OG (W.D. Tex.); <u>Columbia Pictures Indus., Inc.</u> v. <u>Does 1–10</u>, Case No. 1:05CV515-BBM (N.D. Ga.); <u>Paramount Pictures Corp.</u> v. <u>Does 1–11</u>, Case No. 4 05CV00335CAS (E.D. Mo.); <u>Columbia Pictures Indus., Inc.</u> v. <u>John Doe</u> (67.123.19.140), Case No. C 04 5243 (N.D. Cal.); <u>Metro-Goldwyn-Mayer Pictures Inc.</u> v. <u>Does 1–2</u>, Case No. 05CV0761-B (POR) (S.D. Cal.); <u>Disney Enters., Inc.</u> v. <u>Does 1–18</u>, Case No. 05-RB-339(CBS) (D. Colo.).

## II.   ARGUMENT

A.   There Is No Present Basis On Which To Challenge Personal Jurisdiction

Personal jurisdiction is a personal defense that can be freely waived.  No individual engaged in illegal file sharing has objected to personal jurisdiction in this case (including those individuals already identified by other ISPs that have cooperated with DigiProtect by complying with the Court's November 29, 2010 Order without demands for compensation).  Comcast has not set forth any basis to assert standing to challenge jurisdiction on behalf of any of its subscribers and, indeed, has not even purported to challenge jurisdiction.  Without the benefit of any actual objections, DigiProtect believes any adjudication of personal jurisdiction now would be little more than an advisory opinion.

Despite DigiProtect's concerns as to the justiciability of the question whether any individual not residing in New York who might choose to object to personal jurisdiction could sustain such a challenge, the Complaint alleges two related grounds to maintain jurisdiction in this forum:[3] (i) injury to DigiProtect in this jurisdiction by willful if not criminal infringement of its copyright; and (ii) sharing of infringing content by all defendants (including those not

---

[3] Paragraph 5 of the Complaint alleges:

> Although the true identity of each John Doe Defendant is currently unknown to DigiProtect, on information and belief, this Court has personal jurisdiction over Defendants under CPLR §§ 301 and 302 because, as set forth more fully herein, numerous such Defendants can be found in this District; because a substantial part of the acts of infringement complained of herein occurred in this District; because the harm suffered by Plaintiff within this District flows directly from such business conducted by Defendants; because Defendants' copying through a shared network has directly and indirectly been tied to copying known to have occurred within this district and caused harm to Plaintiff in this district; because Defendants' activities in and directed to New York were purposeful, and there is a substantial relationship between these transactions and the claims asserted herein; and Defendants engaged in tortious conduct without the state which has caused injury to Plaintiff within the state and which Defendants expected or should reasonably have expected to have consequences in the state and Defendants derive substantial benefits from interstate or international commerce.

- 4 -

physically present in this State) with New York computers.

Numerous precedents in this jurisdiction support the proposition that a copyright owner suffers injury where the copyright owner is based, irrespective of the location of the infringing conduct. See, e.g., McGraw-Hill Cos., Inc. v. Ingenium Techs. Corp., 375 F. Supp. 2d 252, 256 (S.D.N.Y. 2005) ("The torts of copyright and trademark infringement cause injury in the state where the allegedly infringed intellectual property is held."); Design Tex Group, Inc. v. U.S. Vinyl Mfg. Corp., No. 04 Civ 5002, 2005 WL 357125, at *1, 2005 U.S. Dist. LEXIS 2143, at *4 (S.D.N.Y. Feb. 14, 2005) ("[B]ecause the plaintiffs (and their intellectual property) are based in New York, the injury is felt within the state no matter where the infringement takes place."); Savage Universal Corp. v. Grazier Constr., No. 04 Civ. 1089, 2004 WL 1824102 (S.D.N.Y. Aug. 13, 2004) (situs of injury under section 302(a)(3) to be New York State where an out-of-state defendant committed trademark infringement that affected a New York-based defendant's website through damage to its goodwill, lost sales, or lost customers); Mfg. Tech. Inc. v. Kroger Co., No. 06 Civ. 3010, 2006 WL 3714445, at *2 (S.D.N.Y. Dec. 13, 2006) ("because plaintiff (and its intellectual property) is based in New York, the injury from the alleged trade secret theft is felt within New York State no matter where the theft took place," citing Sybron Corp. v. Wetzel, 46 N.Y.2d 197, 204–06 (1978) (finding financial injury to be felt in New York where defendant's out-of-state act of misappropriation of trade secrets threatened loss of New York sales)); Mario Valente Collezioni, Ltd. v. Confezioni Semeraro Paolo, S.R.L., 115 F. Supp. 2d 367, 376–77 (S.D.N.Y. 2000) (defendant's behavior constituting unfair competition and trademark infringement was outside of New York, but caused injury within New York, thus constituting grounds for finding personal jurisdiction); Cello Holdings, L.L.C. v. Lawrence-Dahl Cos., 89 F. Supp. 2d 464, 470 (S.D.N.Y. 2000) (defendant's cybersquatting outside New York caused injury to trademark owner within New York). Cf. DiStefano v. Carozzi N. Am., Inc., 286

F.3d 81, 84 (2d Cir. 2001) (applying the "situs of injury" test in a wrongful termination matter to find personal jurisdiction in New York where the employment existed in New York, even though the actual notification of termination occurred outside of New York).

DigiProtect USA is a New York corporation, and the Complaint alleges it sustains injury here from piracy of its copyrighted works online.  In the pending case, Penguin Group (USA), Inc. v. American Buddha, 609 F.3d 30 (2d Cir. 2010), the Second Circuit withheld judgment on this question, instead certifying the very issue to the New York Court of Appeals.  However, it did so with a specific emphasis on the precise question at issue here (evidently not addressed by the district court in Penguin Group): namely, whether "considerations of the situs of injury due to the speed and ease with which the Internet may allow out of state action to cause injury to copyright holders resident in New York."  Id. at 32.  Said the Court: "while Penguin has not specifically pleaded that the situs of injury is influenced by the fact that the alleged infringement here was conducted by means of the Internet and online libraries, we recognize that this fact may affect the analysis."  Id. at 34.  Seemingly pressing the New York Court of Appeals to recognize personal jurisdiction so as to protect copyright owners from the new threats they face in the digital age, the Second Circuit specifically noted regarding one New York precedent, Sybron Corp. v. Wetzel, 46 N.Y.2d 197, 385 N.E.2d 1055, 413 N.Y.S.2d 127 (1978), that the case:

> . . . does raise a reasonable likelihood that the New York Court of Appeals may interpret the alleged wrong here – which is analogous to a commercial tort and involves both the presumptive presence of intellectual property rights in the State, and the likely ability of the plaintiff to foresee that the distribution of the copyrighted material in issue will cause loss beyond that caused by the initial unauthorized uploading of the copyrighted works – to involve more than derivative economic harm within the State.  Penguin has alleged infringement not only through the copying of its copyrighted work, but also through the unauthorized "reproduction and distribution" of the works over the Internet.  Compl. ¶ 28.  Penguin presented evidence that American Buddha had offered the materials to its 50,000 users via the Internet free of charge, and had provided assurances that downloading the works would not constitute copyright infringement.  Penguin has not asserted the foreseeable loss of customers in New

York, and apparently for this reason the district court treated the alleged infringement to be analogous to "an unauthorized photocopy of a copyrighted book in Oregon or Arizona." Penguin, 2009 WL 1069158, at *4, 2009 U.S. Dist. LEXIS 34032, at *12. We note nonetheless in the context of certifying a question to the New York Court of Appeals that the allegation of distribution over the Internet may be a factor in the Court's interpretation of the statute in question..

Id. at 39.

In recognizing the special risks to copyright holders created by rampant theft of their proprietary works (and thus supporting DigiProtect's basic contention – questioned by Comcast and evidently by this Court whether copyright owners require heightened protection) the Second Circuit further noted in Penguin Group that defendant's principal place of business was in Arizona and its websites (from which unnamed third parties were able to download unauthorized copies of Penguin's literary works) were hosted on servers located in Arizona and Oregon. "Aside from the accessibility of its sites in New York, American Buddha conducts no business in, and has no other contacts with, the State." Id. at 33. Thus, explained the Second Circuit: "[t]he district court granted American Buddha's motion to dismiss because it found the situs of injury to be where the electronic copying of the works was made – presumably, although this was not explicitly stated by the court, in Arizona or Oregon, where the servers to which American Buddha uploaded the works were located – and not in New York, where Penguin's headquarters is located." Id. at 33–34. The Second Circuit's inquiry concerning the location of the computers used for transferring infringing copies is directly relevant here.

It is premature for DigiProtect or the Court to know on what basis any individual might challenge personal jurisdiction, but neither Comcast nor any such individual has at this juncture disputed the allegation in the Complaint that all of the file sharing here at issue arose from two "swarms" of bit-torrent file sharing with and among New York residents. Indeed, all of the John Does referenced in Exhibit B to the Complaint, participated in either of two swarms of file

- 7 -

NYC_1078640.1

sharing. These occurrences included at least twenty-three computers located in New York. Thus, all of the file sharers, including all of Comcast's subscribers, no matter where they were located, were actively trading infringing files with New Yorkers.

Unlike <u>Penguin Group</u>, where the plaintiff did not sue any of the individual downloaders and conceded the servers from which the copying was done were in another forum, Digiprotect specifically alleges that the copying by all of the John Doe defendants was done by sharing files with and among computers (<u>i.e.</u> servers) based in New York. For this independent reason, regardless of the ruling of the New York Court of Appeals under the specific facts in <u>Penguin</u>, DigiProtect believes that personal jurisdiction should certainly be maintained in New York on the specific facts alleged here were any individual to seek to challenge the same. Upholding jurisdiction on the specific facts alleged here is consistent with the "considerations of the situs of injury" cited by the Second Circuit "due to the speed and ease with which the Internet may allow out of state action to cause injury to copyright holders resident in New York."

### B. There is No Basis on Which to Question Joinder

Fed. R. Civ. P. Rule 21 provides that "Misjoinder of parties is not a ground for dismissing an action." The rule does go on to state that "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." However, at this juncture, there are no parties in this case, only John Doe defendants. Rather, DigiProtect has simply requested discovery to identify such individuals. As noted above (<u>supra</u> note 2), DigiProtect's November 22, 2010 Memorandum supporting its request for <u>ex parte</u> pre-suit discovery set forth a long line of precedents in this jurisdiction and elsewhere that such discovery in entirely proper.

Although DigiProtect believes that at this stage of pre-suit discovery it is premature to assess which as-yet unidentified individuals should remain parties to the suit, Fed. R. Civ. P. Rule 20 provides that "Persons . . . may be joined in one action as defendants if:

(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and

(B) any question of law or fact common to all defendants will arise in the action."

As DigiProtect noted at the January 13, 2011 hearing, even at this early point in the proceeding (when no individual has even challenged joinder), it is also abundantly clear that neither Comcast nor any such individual has disputed the allegation in the Complaint that all of the file sharing here at issue arose from a common series of transactions or occurrences: namely, two "swarms" of bit-torrent file sharing with and among New York residents. Indeed, all of the John Does referenced in Exhibit B to the Complaint participated in either of two swarms of file sharing. Rule 20(A) thus should easily be satisfied. Moreover, as noted above, some of the IP addresses already disclosed to DigiProtect by other ISPs reflect multiple acts of downloading by the same individual. Until the actual names are revealed by Comcast, it is not possible for this Court to assess which other IP addresses used by Comcast subscribers similarly were used by the same individual. Nor is there any question that all of the activity shares common questions of law and fact under Rule 20(B) as all of the individuals are charged with essentially identical acts of infringement of the same work. DigiProtect thus submits that should any John Doe defendant seek to sever, any such motion will have to be denied. However, at this juncture, DigiProtect is simply seeking the names of individuals to allow them an opportunity to respond to the allegations of illegal file sharing.

### C.    Comcast Should Be Required to Identify Its Subscribers

Although DigiProtect had offered to provide some compensation to Comcast (or other

- 9 -

ISPs) for expenses the ISPs reasonably could demonstrate in responding to the subpoena, the fact is that Congress has already determined that the ISPs are entitled to zero compensation – unless they wish to face direct financial liability for permitting such infringing conduct by their subscribers to occur on their networks.  That is simply part of the price the ISPs must pay under the Digital Millennium Copyright Act (the "DMCA") if they wish to avoid direct financial liability for the piracy of their users.  (Alternately, they could, of course, create other technical means to limit such piracy.)  However, Congress has made explicit under Section 512 of the DMCA, which creates a safe harbor for contributory liability, that in exchange for the safe harbor, internet service providers must have in place a policy to prevent infringements by subscribers, including a means of notifying subscribers.  "To be eligible for any of the four safe harbors at §§ 512(a)–(d), a service provider must first meet the threshold conditions set out in § 512(i)."  Perfect 10, Inc. v. CCBill LLC, 488 F.3d 1102, 1109 (9th Cir. 2007).  These conditions include the requirement that the service provider "has adopted and reasonably implemented, and informs subscribers and account holders of the service provider's system or network of, a policy that provides for the termination in appropriate circumstances of subscribers and account holders of the service provider's system or network who are repeat infringers." Id., citing 17 U.S.C. § 512(i)(1)(A); Ellison v. Robertson, 357 F.3d 1072, 1080 (9th Cir. 2004).  Implementation is reasonable if, under appropriate circumstances, the service provider terminates users who "repeatedly or blatantly infringe copyright."  Perfect 10. v. CCBill, 488 F.3d at 1109.  Courts have found that implementation may come in a variety of forms, but that service providers are required to "keep track" of repeat infringers, such as with a "DMCA Log" of notices of infringements. Id. at 1110. See also Ellison, 357 F.3d at 1080 ("AOL allowed notices of potential copyright infringement to fall into a vacuum and go unheeded; that fact is sufficient for a reasonable jury to conclude that AOL had not reasonably implemented its policy against repeat

infringers."). "A policy is unreasonable only if the service provider failed to respond when it had knowledge of the infringement." Perfect 10. v. CCBill, 488 F.3d at 1113.

Comcast (like other ISPs) does have in place a policy to prevent infringements by its subscribers. Thus, Comcast clearly has sought to avail itself of the safe harbor created by Congress and recognizes the actual financial risk it faces from allowing its users to steal copyrighted materials. In effect, seeking to have it both ways, Comcast also now wishes to charge the copyright holder for enforcing the same rights Comcast has already agreed to protect in exchange for the safe harbor[4]. Subsequent to the January 13, 2011 hearing, DigiProtect has now delivered to Comcast notices of infringement pursuant to the terms of 17 U.S.C. § 512 et seq., and the service provider's Terms of Service. Pursuant to these notices, Comcast is now required to conduct the identical look-ups for which it seeks to charge DigiProtect $120. However, Congress has already established that the ISP is not entitled to compensation from a copyright holder such as DigiProtect for performing such a look-up.[5] To be sure, Congress has

---

[4] As noted in the December 30, 2010 letter from the undersigned to the Court, and as Comcast conceded at the January 13 hearing, the amounts Comcast has sought simply reflect general overhead for which Comcast has refused to provide any actual accounting beyond the peremptory and conclusory assertion of its counsel, Ms. Mosley, who does not purport to have personal knowledge how the sums actually are derived.

[5] Further evidence that Congress intended that the ISPs divulge the identities of subscribers engaging in unlawful conduct is that 47 U.S.C. §551 ("Protection of subscriber privacy"), previously cited to the Court in DigiProtect's November 22, 2010 Memorandum, specifically permits discovery from internet service providers under precisely these circumstances. In relevant part, the statute provides:
   (c) Disclosure of personally identifiable information
      (2) A cable operator may disclose (personally identifiable information concerning any subscriber) if disclosure is –
         (B) . . . made pursuant to a court order authorizing such disclosure, if the subscriber is notified of such order by the person to whom the order is directed.

Contrary to Comcast's previous arguments to this Court, the statute merely requires that the subscriber be notified. It does not require the most expensive form of notice and does not require prior notice.

- 11 -

not required that the ISP divulge that information to the copyright holder; and, as such, if there is some additional cost of sharing that information with DigiProtect (beyond the amounts incurred in performing the look-up that Comcast has already committed itself to perform at no cost in exchange for the Congressionally-crafted safe harbor), DigiProtect is prepared to pay any such reasonable costs.

### III.   CONCLUSION

For the foregoing reasons, DigiProtect respectfully requests that it be permitted to conduct discovery immediately and prior to the Rule 26 conference herein, together with such other and further relief as the Court deems proper.

Respectfully submitted,

Dated: January 25, 2011  
      New York, New York

FOLEY & LARDNER LLP

By: __s/ Jonathan Moskin_____  
Jonathan Moskin (JM-9814)  
Britton Payne (BP-5858)  
90 Park Avenue  
New York, New York 10016  
Tel: (212) 338-3572  
Fax: (212) 687-2329

*Attorneys for Plaintiff*  
*DigiProtect USA Corporation*